UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Civil No. 3:17-cr-0016-GFVT-REW |
| V. | ) ) | |
| RONNIE C. RODGERS, | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Ronnie C. Rodgers's Motion in Limine. [R. 34.] Mr. Rodgers seeks to exclude the opinion testimony of Government witnesses Marvin Combs and Chad Harlan. For the reasons stated below, this Motion is **DENIED**.

**I**

Ronnie C. Rodgers was indicted on December 7, 2017, for one count of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371. Mr. Rodgers allegedly solicited investors in various oil and gas production ventures knowing that the ventures would not produce enough oil and gas to provide a return on investments. [R. 1.]

> The plan was to create an appearance of business legitimacy; obtain money from investors under falsely-created expectations of profit; obtain more money from investors than was necessary to drill the wells; go through the motions of drilling what the Operators expected to be dry holes or wells with minimal production; lull and placate complaining investors with various false excuses for non-production; use large sums of investor money for personal expenses and purchases; and ultimately, discontinue any contact with the investors.

*Id*. at 5.  In order to prove their case, the government intends to introduce as experts Marvin Combs and Chad Harlan.  [R. 35 at 1.]  Mr. Rodgers maintains that the testimony of Mr. Combs and Mr. Harlan is inadmissible under *Daubert v. Merrill Dow Pharm., Inc.*, Federal Rule of Evidence 702, Federal Rule of Evidence 704(b), and Federal Rule of Evidence 403.

## II

### A

#### 1

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  From Rule 702 comes a three-part test for admitting expert testimony.  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008).  First, is the witness qualified?  Next, is the testimony relevant, more precisely, will it assist a trier of fact to understand the evidence or determine a fact in issue?  Finally, the testimony of the expert must be scientifically reliable.

The seminal case applying this test is *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  In that decision, the Supreme Court explained that a district court's gatekeeping responsibility is implicit in Rule 702, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert*, 509 U.S. at 597.  Further, the Supreme

Court listed several specific factors to help determine the reliability of expert testimony based on scientific knowledge. *See id.* at 590, n. 8. These factors include whether a theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether there is a high known or potential error rate; whether there are certain operation standards that should have been or were followed; and whether the theory or technique is generally accepted within the scientific community. *Id.* at 592–94. Later, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court determined that the gatekeeping obligation and subsequent factors established in *Daubert* apply with equal force to non-scientific experts. However, those factors are not definitive and district courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152.

Initially, the witness must be qualified to testify as to his opinion. A witness's qualifications may be determined by his "knowledge, skill, experience, training, or education." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016). "The issue . . . is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

As for the second prong of the test, district courts "must ensure that the proposed expert testimony is relevant to the task at hand and will serve to aid the trier of fact." *United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000). The Supreme Court in *Daubert* referred to this prong as the "fit" requirement. *See id.*; *Daubert*, 509 U.S. at 591–93. Because "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes," courts must consider whether a particular expert witness's testimony will truly assist the trier of

fact to understand the evidence in the case at hand. *Daubert*, 509 U.S. at 591.

Finally, the Court must determine whether this testimony is reliable. To be reliable, "a judge must ascertain whether it is 'ground[ed] in the methods and procedures of science.'" Federal Judicial Center, *Reference Manual on Scientific Evidence* 13 (3d ed. 2011) (quoting *Daubert*, 509 U.S. at 590). In *Daubert*, the Supreme Court outlined several factors this Court should consider to make that determination, including if the theory or technique has been or can be tested, whether such theory or technique has undergone peer review and publication, what the known or potential rate of error is for the theory or technique, and whether the theory or technique is "generally accepted." *Adams v. Cooper Indus., Inc.*, No. 5:03-cv-476-JBC-REW, 2007 WL 2219212, at *2 (E.D. Ky. July 30, 2007) (quoting *Daubert*, 509 U.S. at 593–94).

Notably, the Court's gatekeeping role under the case law "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999). Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The trial court is not required to hold a *Daubert* hearing, and we decline to do so here. *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000). Whether or not to admit expert testimony is a matter over which the district court ultimately enjoys broad discretion. *See, e.g.*, *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 672 (6th Cir. 2010).

Mr. Rodgers argues that the Government's expert witness testimony is not admissible under FRE 702 and *Daubert*. Specifically, Mr. Rodgers claims their testimony is based on neither research nor publication, merely their own views. [R. 34-1 at 4–5.] Additionally, he

asserts that neither the testimony of Mr. Combs nor the testimony of Mr. Harlan will assist the jury in determining whether Mr. Rodgers committed fraud. *Id*. at 6–9. The Court examines each witness individually.

2

Marvin Combs is clearly qualified to give his expert opinion on this matter. The United States seeks his testimony about the expected production of oil wells in the south-central part of Kentucky, and how much oil one well would reasonably be expected to produce. [R. 34-1.] Mr. Combs has worked for years at the Kentucky Division of Oil and Gas, collecting the required reports from Kentucky oil producers regarding the success or failure of drilling each oil well. [R. 35 at 2.] He has testified in court previously concerning the expected yield of an oil well drilled in central Kentucky. *Id*. at 3–4. He worked in several oil companies and is familiar with the costs and geographical challenges of drilling. *Id*. at 4. The Court finds Mr. Combs qualified to offer an opinion in this matter on how much oil one could reasonably expect to yield from a well drilled in the relevant geographic area.

Furthermore, his testimony is relevant. The indictment states that Mr. Rodgers was aware that the areas he was drilling would not produce enough oil to give investors any return and continued to solicit investments anyway. [R. 1 at 4.] He allegedly told investors that oil and gas production was guaranteed, and that his existing wells produced 200 barrels of oil a day. *Id*. at 5–6. Mr. Combs's testimony will assist jurors in determining whether Mr. Rodgers's representations to investors were credible, or whether he know the statements he was making were false. The Court thus finds Mr. Combs's testimony relevant.

Finally, this testimony is scientifically reliable. Mr. Rodgers places emphasis on how Mr. Combs's statements are not peer reviewed or based on scientific studies. [R. 34-1 at 4–5.] However, such peer review or scientific testing is not required. The factors listed in *Daubert* may not all apply in all cases, and are meant to be helpful guidelines, not a "definitive checklist or test." *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 150–52 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993)). In this case, it is not necessary that Mr. Combs have subjected his findings to peer review or tested his hypothesis. His testimony here is based entirely on the reports he collected over the years in his job at the Kentucky Division of Oil and Gas. [R. 35 at 2–3.] Industry-specific experts are permitted to form opinions based only on their own experiences as to whether the questioned action deviates from the standard practices the expert observed in their respective fields. *See First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001). "Opinions formed in sch a manner do not easily lend themselves to scholarly review or to traditional scientific evaluation." *Id*. The Court finds Mr. Combs's methods and experience renders his expert testimony reliable, allowing the jury to decide the persuasiveness of such testimony. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008).

**3**

The Government admits that Mr. Harlan's testimony may present a more difficult determination. [R. 35 at 7.] Mr. Harlan plans to testify as to (1) how a typical, legitimate oil and gas development program is operated, (2) that the investment contracts used by Mr. Rodgers were securities, (3) the registration requirements for offering securities, and (4) what types of information is typically considered "material" by securities investigators. *Id*.

Since 2000, Chad Harlan has worked at the Kentucky Department of Financial Institutions (DFI) for the Securities Compliance Branch, the Securities Enforcement Branch, and the Consumer Protection Branch. [R. 35-1.] He has spent the last eighteen years reviewing bank records and investment documents to check compliance with the appropriate regulations. *Id*. at 1. He has also received specialized training in white collar financial crimes investigations and examinations of financial records. *Id*. at 2. His compliance and enforcement experience qualify him to offer an opinion about how securities and investment programs operate.

His testimony is also relevant and will assist the jury in understanding the traditional process of investing in an oil venture. Investment law compliance is difficult to understand without a proper background, and a layperson most likely will not have this requisite background to recognize what kinds of information Mr. Rodgers should have disclosed to his investors. Without knowing what he should have done, the jury cannot reasonably be expected to determine whether he made appropriate disclosures. Additionally, Mr. Harlan will be able to opine to the jury about whether Mr. Rodgers's offerings were, in fact, securities. As the Court has already stated, most lay persons are not well-versed in oil investing and securities. Mr. Harlan's expert testimony will aid the jury in whether Mr. Rodgers committed the charged crime.

Mr. Harlan's testimony is finally reliable. Again, Mr. Rodgers asserts that the Court should exclude Mr. Harlan's statements because they are not derived from scientific studies. [R. 34-1 at 4–5.] This is simply not the standard under *Daubert*. Mr. Harlan is experienced in the field of securities enforcement and compliance, and his testimony based on these experiences "do not easily lend themselves to scholarly review or to traditional scientific evaluation." *See First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001). As an "industry-

specific expert," Mr. Harlan is permitted to offer testimony about whether Mr. Rodgers's practices conformed to standard securities and investment programs. *Id.* As with Mr. Combs, the Court finds only that Mr. Harlan's testimony is admissible under *Daubert* and leaves the question of trustworthiness to the jury. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008).

**B**

Finding that both Mr. Combs and Mr. Harlan may testify under the standards of FRE 702, the Court now turns to Mr. Rodgers's argument that their testimony is inadmissible under FRE 704(b). FRE 704 states, "An opinion is not objectionable just because it embraces an ultimate issue." However, the Rule limits this admissibility when it involves the mental state of a criminal defendant. "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b).

According to Mr. Rodgers, Mr. Combs plans to testify about the expected production of oil wells in the south-central area of Kentucky. [R. 34-1 at 1–2.] Mr. Harlan plans to testify about the structure of typical oil and gas ventures and the material disclosures required to offer valid securities. *Id*. at 2–3. The Court fails to see how this testimony evidences an opinion as to Mr. Rodgers's mental state or condition. Impermissible opinion testimony concerning mental state occurs when an expert witness attempts to testify as to whether the defendant possessed the requisite intent for a conviction. *United States v. Cox*, 826 F.2d 1518, 1524 (6th Cir. 1987). Experts are permitted to supply the jury "with data from which it could draw the ultimate legal

conclusion." *Id*. The proffered testimony by both Mr. Combs and Mr. Harlan suggest neither expert plans to testify as to Mr. Rodgers's mental state. [R. 34-1 at 1–3.] The Court, therefore, denies Mr. Rodgers's motion to exclude under FRE 704(b). However, if such testimony surfaces at trial, Mr. Rodgers may raise additional objections for the Court to evaluate.

C

Mr. Rodgers also seeks to exclude the testimony of Mr. Combs and Mr. Harlan because such testimony would be unfairly prejudicial. [R. 34-1 at 12.] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As support for this, Mr. Rodgers believes the jury could be unduly biased by "their aura of special reliability and trust," and that admitting such testimony "implies Harlan and Combs have special knowledge about the Defendant." [R. 34-1 at 12–13.]

Initially, the Court notes that Mr. Rodgers does not contest that the testimony of Mr. Combs and Mr. Harlan is relevant to this case. According to Mr. Rodgers's own motion, Mr. Combs plans to testify as to the productivity of oil wells while Mr. Harlan plans to testify as to the practices of investments and securities. *Id*. at 1–3. These things naturally relate to the crime with which Mr. Rodgers is charged. But such evidence does not "provide the government with an unfair advantage gained from the capacity of the evidence to persuade by illegitimate means." *United States v. Moreno*, 933 F.2d 362, 375 (6th Cir. 1991) (quotations and citations omitted). Showing that a risk of unfair prejudice substantially outweighs the probative value of this evidence is a heavy burden. *United States v. Ramer*, 883 F.3d 659, 670 (6th Cir. 2018). Simply

9

because the Government's witnesses may exhibit an "acknowledged aura of special reliability and trustworthiness" does not rise to this level. The Court finds that the probative value of Mr. Combs's and Mr. Harlan's testimony is not substantially outweighed by a risk of unfair prejudice. However, Mr. Rodgers remains free to object to specific testimony on the basis of FRE 403 at trial.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that Defendant Ronnie C. Rodgers's Motion in Limine [**R. 34**] is **DENIED**.

This the 25th day of July, 2018.

Gregory F. Van Tatenhove
United States District Judge