UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>V.<br><br>RONNIE C. RODGERS,<br><br>Defendant. | Criminal No. 3:17-cr-0016-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

After a two-week securities fraud criminal trial, Defendant Ronnie C. Rodgers filed a Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. [R. 74.] Mr. Rodgers believes that no reasonable juror could find evidence of a conspiracy or could find sufficient evidence of Mr. Rodgers's involvement in such a conspiracy. However, because the Court finds evidence sufficient to sustain a conviction, the Court **DENIES** Mr. Rodgers's Motion.

**I**

Mr. Ronnie Rodgers was charged on December 7, 2017 with one count conspiracy to commit mail fraud, wire fraud, and securities fraud in violation of 18 U.S.C. §§ 1341 and 1343, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240-10b-5. [R. 1.] According to the indictment, from 2007 through 2017, Mr. Rodgers and his associates executed a scheme to sell oil and gas leases in geographical areas where Mr. Rodgers knew the leases would not produce enough oil or gas to provide a return of the investments. *See id*.

Over the course of the trial, the Government presented evidence seeking to prove that Mr. Rodgers and his associates made materially false representations to potential investors designed to "induce investors to invest in oil and gas contracts; further induce them to provide additional funds after their first investment; and, to lull and pacify investors when they complained about a lack of return on their investment." [R. 1 at 4.] According to the Government's theory, Mr. Rodgers and his brother operated Rick-Rod Oil Company, Inc. from 2007 to 2011, selling these investments, and then after 2011, Mr. Rodgers and others formed various companies in Tennessee: Big South Resources, Big South Energy, Hydro & Green Global Energy, LLC, and R&R Plus, LLC. *Id*. at 3. Counsel for the Government called numerous investors in Mr. Rodgers's various operations, all of whom testified that they believed Mr. Rodgers solicited their investments and held himself out to be a partner in the operation. [R. 75 at 1.] The jury found Mr. Rodgers guilty of the one count indictment. [R. 64.]

After the close of the Government's case in chief, Mr. Rodgers moved for a Judgment of Acquittal pursuant to Rule 29. [R. 59.] The Court took this motion under advisement. *Id*. At the close of trial, Mr. Rodgers renewed this motion, and the Court again took it under advisement. [R. 61.] Following the jury's verdict, he filed another Rule 29 motion. [R. 74.] After considering the arguments and the evidence presented by the Government during trial, the Court upholds the jury's verdict and denies the request for post-trial relief.

## II

### A

As an initial matter, because the Court reserved decision on the motion after the close of the Government's proof, the Court must decide the motion on the basis of the evidence at the

2

time the ruling was reserved. Fed. R. Crim. Pro. 29(b). The Court, therefore, only considers the evidence presented by the Government during its case in chief.

Rule 29 requires this Court to enter a judgment of acquittal on "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When considering a Rule 29 motion based on an alleged insufficiency of the evidence, the Court may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute its judgment for that of the jury. *See United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015). Instead, the Court views all of the evidence in the light most favorable to the Government, and then it considers whether any rational trier of fact could find the elements of the counts of conviction beyond a reasonable doubt. *See, e.g.*, *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016); *United States v. Villarce*, 323 F.3d 435, 438 (6th Cir. 2003). "In sum, a defendant claiming insufficiency of the evidence bears a very heavy burden." *Callahan*, 801 F.3d at 616 (quoting *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007)). Because Mr. Rodgers has failed to sustain this burden, the Rule 29 motion is denied.

A review of the trial evidence demonstrates that a rational trier of fact could conclude that Mr. Rodgers was guilty beyond a reasonable doubt of the single conspiracy conviction. Even though the Indictment charged Mr. Rodgers with conspiracy to commit mail fraud, wire fraud, and securities fraud, the jury could find him guilty if the evidence sufficiently established a conspiracy to commit a violation of either mail fraud or wire fraud or securities fraud. *See* Sixth Circuit Pattern Jury Instruction 2.12, *Use of the Word "And" in the Indictment*. To convict Mr. Rodgers with mail or wire fraud, the jury was required to find the development of or participation in a scheme to defraud, that he used the mails or an interstate wire communication in furtherance of the scheme, and that he possessed "intent to deprive a victim of money or

3

property." *United States v. Ramer*, 883 F.3d 659, 681 (6th Cir. 2018) (enumerating the elements of mail fraud); *United States v. Olive*, 804 F.3d 747, 753 (6th Cir. 2015) (enumerating the elements of wire fraud and noting, "Mail fraud has essentially the same elements [as wire fraud] except that the use of the mails rather than a wire is required."). For the jury to convict Mr. Rodgers of securities fraud, the jury had to find that he used or employed a manipulative or deceptive device in contravention of 17 C.F.R. § 240-10b-5 in connection with the purchase or sale of a security. 15 U.S.C. § 78j(b). Accordingly, the jury had to determine that Mr. Rodgers (1) employed a device, scheme, or artifice to defraud, (2) made any untrue statement or omission of a material fact, or (3) engaged in an act, practice, or course of business, operating as a fraud or deceit. 17 C.F.R. § 240-10b-5. However, Mr. Rodgers was charged with *conspiracy* to one of these things, and thus, the jury only need to find that Mr. Rodgers joined in an agreement to commit mail, wire, or securities fraud, and that at least one person in the conspiracy committed an overt act in support of the conspiracy. *United States v. Phillips*, 872 F.3d 803, 806 (6th Cir. 2017).

Mr. Rodgers presents three arguments in support of his motion. First, he argues the Government presented no evidence that two or more persons conspired to commit mail fraud, wire fraud, or securities fraud. [R. 74-1 at 3.] Next, he claims there was no evidence that Mr. Rodgers ever knowingly and voluntarily joined the alleged conspiracy. *Id*. Finally, he maintains that the Government presented no evidence that any member of the conspiracy committed an overt act after December 6, 2012. *Id*.

**B**

**1**

Initially, Mr. Rodgers believes that there was no evidence presented of anyone conspiring to commit mail fraud, wire fraud, or securities fraud. [R. 74-1 at 4.] However, the testimony and evidence presented at trial supports the conviction of a conspiracy. Existence of a conspiracy "may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *United States v. Elliott*, 876 F.3d 855, 863–64 (6th Cir. 2017) (quoting *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997). In fact, a "material understanding among the parties" is sufficient to establish a conspiracy. *United States v. Volkman*, 797 F.3d 377, 390 (6th Cir. 2015) (quoting *United States v. Conrad*, 507 F.3d 424, 432 (6th Cir. 2007)). Conspirators must "pursue the same criminal objective," but the individual conspirators do not need to facilitate or agree to facilitate each part of the substantive crime. *Ocasio v. United States*, 136 S.Ct. 1423, 1429 (2016) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). If the plan calls for some participants to commit the crime and others to merely provide support, even those who provided support are co-conspirators. *Id*. The law does not even require a defendant to know the identities of all other members. *United States v. Fields*, 763 F.3d 443, 468 (6th Cir. 2014). A conspiracy may be inferred by a defendant's close relationship between alleged conspirators, though mere association is not sufficient. *United States v. Graham*, 622 F.3d 445, 449 (6th Cir. 2010). Furthermore, Mr. Rodgers could be convicted of a conspiracy even if the United States never identified co-conspirators, so long as evidence supports the existence of an agreement between two or more persons. *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991).

Contrary to Mr. Rodgers's argument, the Government presented ample evidence that the investors dealt with people other than Mr. Rodgers as well as circumstantial evidence that others involved were pursuing the same criminal objective as Mr. Rodgers. Both parties focus on the involvement of Mr. Rodgers's brother, Rickey, and whether Rickey Rodgers's involvement amounted to conspiracy. [R. 74-1; R. 75; R. 76.] Rickey clearly worked with Mr. Rodgers in several ventures. Ronnie was employed by Rickey when Rickey owned Rick-Rod Oil. [R. 33 at 51.] Even after the Temporary Restraining Order in July of 2011, Rickey was signing documents as president of Rick-Rod Oil. [*See e.g.* Government's Exhibit 14K.] Rickey was listed on the letterhead as Rick-Rod's "President," while Ronnie was listed as "Field Operations." [R. 33 at 41.] In 2012, Rickey was listed as the President of Big South Resources. [Government's Exhibit 26B.] Mr. Rodgers indicated, in 2013, that he and his brother owned most of the properties in town and drilled oil. [R. 70 at 10.] Ronnie made several payments to Rickey for consulting, equipment, and labor in 2015 and 2016. [Government's Exhibit 33B.] Rickey's continued involvement in Ronnie's businesses is sufficient for the jury to conclude they were working together toward a common goal.

Even without Rickey Rodgers's involvement, the Government presented other alleged co-conspirators and ample evidence that the jury could have convicted Mr. Rodgers. First, both Andrew Linley and Avner Elizarov indicated interactions with and payments to David Mosier. Mr. Elizarov indicated that he contacted Mr. Mosier concerning a damaged oil tank. [R. 70 at 20–21.] Mr. Linley testified that Mr. Rodgers put him in contact with David Mosier to monitor his wells. [R. 72 at 47.] Mr. Linley paid Mr. Mosier $1,400 per month to monitor the wells, but he was dissatisfied with the lack of work done by Mr. Mosier. *Id.* at 47, 61. Mr. Rodgers had apparently advised both parties to contact Mr. Mosier concerning repair work needed on their

6

wells, but the work was not being done. Based on this testimony alone, the jury could have inferred that Mr. Mosier was participating in a common plan with Mr. Rodgers to defraud investors by taking investors' money without doing the work for which they contracted.

Multiple witnesses also testified about their contacts with Martin Kleinman. Mr. Kleinman was apparently an investment broker from Falcon Capital Asset Group. [R. 70 at 5; R. 72 at 6–10.] When Mr. Elizarov and Mr. Linley responded to Mr. Rodgers's advertisement, it was Mr. Kleinman who contacted investors and facilitated meetings with Mr. Rodgers. *Id*. In fact, Mr. Kleinman even told Mr. Linley to "call my partner r.c. rodgers" and provided Mr. Rodgers's phone number. [Government Exhibit 28D.] Again, this is enough circumstantial evidence for a jury to reasonably interpret their cooperation as a "common plan." *See Elliott*, 876 F.3d at 863–64; *Avery*, 128 F.3d at 971.

So long as all co-conspirators had a common goal or enterprise, it is of no consequence that the co-conspirators were only connected by Mr. Rodgers. *See United States v. Swafford*, 512 F.3d 833, 841–42 (6th Cir. 2008). Here, the "common goal" was to defraud investors. Mr. Rodgers told investors to contract with Mr. Mosier to repair their wells, though no evidence was presented that Mr. Mosier ever repaired oil wells, even after taking investors' money. Mr. Kleinman continued to send investors to Mr. Rodgers, even though the vast majority of investors lost their investments with Mr. Rodgers's enterprises. A reasonable jury could find that these alleged members each "agreed to participate in what he knew to be a collective venture directed toward a common goal." *Id*. at 841 (quoting *United States v. Warner*, 690 F.2d 545, 549 (6th Cir. 1982)). The jury could infer intent based on the circumstantial evidence presented, since both Mr. Mosier and Mr. Kleinman continued working with Mr. Rodgers indefinitely. *Elliott*, 876 F.3d at 863–64; *Avery*, 128 F.3d at 971. Mr. Rodgers may believe that the testimony

7

presented was not credible, or that the jury should not have weighed this evidence so heavily, but the Court may not reevaluate the credibility of the witnesses or reweigh the evidence. *See United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015). Viewing the testimony in the light most favorable to the Government, a rational trier of fact could find the existence of a conspiracy beyond a reasonable doubt. *See, e.g.*, *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016); *United States v. Villarce*, 323 F.3d 435, 438 (6th Cir. 2003).

**2**

Next, Mr. Rodgers asserts that there was no evidence that he knowingly and voluntarily joined the alleged conspiracy or that he committed any acts to advance the conspiracy. [R. 74-1 at 3.] Indeed, in the same page, Mr. Rodgers has attempted to argue that there was no conspiracy because he did everything AND that he could not be responsible for the conspiracy because he did nothing. The jury determined that a conspiracy existed, and Mr. Rodgers has admitted that some investors "interacted only with Ronnie Rodgers." [R. 74-1 at 6.] Evidence established, and Mr. Rodgers does not contest, that Mr. Rodgers acted in a leadership role in each enterprise: Rick-Rod Oil as "Field Operations" [R. 33 at 41]; Big South Resources with the power to sign for Ronnie Rodgers [Government Exhibit 26B], Hydro & Green Global Energy, LLC,[1] as president [Government Exhibit 25A]. The jury could conclude, in these leadership positions, Mr. Rodgers would have been poised to know whether or not the investors could expect a return on their investments. Additionally, Mr. Rodgers admits that he, himself, sold investments to these investors. [R. 74-1 at 5–10.] The Government was only required to establish that Mr. Rodgers knew of the objective of the conspiracy and voluntarily associated himself with the conspiracy to further that objective. *United States v. Smith*, 749 F.3d 465, 477 (6th Cir. 2014).

---

[1] A business card introduced by the Government indicates that "Hydro & Green Global Energy LLC" was also known as "R&R Plus, LLC." [Government Exhibit 28C.]

Solicitation of these investments is an act in furtherance of the conspiracy to defraud. Viewing the testimony and evidence in the light most favorable to the Government, a rational trier of fact could have reasonably concluded that Mr. Rodgers knew of the scheme because of his positions within the various companies, and that he voluntarily associated himself with the scheme because of the continued involvement with the various oil companies.

**3**

Finally, even if there was a conspiracy, and even if he was a part of the conspiracy, Mr. Rodgers argues that the Government introduced no evidence of overt acts occurring after December 6, 2012, and thus any conspiracy to defraud is barred by the statute of limitations. [R. 74-1 at 3.] The statute of limitations for this conspiracy charge is five years. 18 U.S.C. § 3282(a). Mr. Rodgers was indicted on December 7, 2017. [R. 1.] Mr. Rodgers relies on the fact that Rick-Rod Oil ceased to exist before December of 2012, and therefore, the conspiracy did not continue through December 6, 2012. [R. 74-1 at 10.] The five-year statutory period does not begin to run until the objectives of the conspiracy have been accomplished or until the objectives have been abandoned. *United States v. Saadey*, 393 F.3d 669, 667 (6th Cir. 2005). Mr. Rodgers did not raise either accomplishment or abandonment as an affirmative defense at trial, nor has he pointed to anywhere in the record that would demonstrate accomplishment or abandonment. *Id*. Instead, he claims that the acts committed after December 6, 2012, could not be done in furtherance of the original criminal objectives.

However, the evidence connecting Rick-Rod to Big South Resources to Hydro & Green Global Energy to R&R Plus is the leadership of Mr. Rodgers himself. A conspiracy does not require continuity of all co-conspirators: co-conspirators can join at any time during the ongoing conspiracy and still be liable for acts performed before they join. *United States v. Robinson*, 390

9

F.3d 853, 882 (6th Cir. 2004). Co-conspirators can also withdraw from the conspiracy without defeating the entire conspiracy. *Id*. The Government presented ample evidence that Mr. Rodgers was still recruiting investors and applying for drilling permits well after 2012. [R. 70; R. 72; R. 73; Government Exhibit 23A; Government Exhibit 23B; Government Exhibit 23C; Government Exhibit 23D.] Accordingly, viewing the evidence in the light most favorable to the Government, the jury could reasonably find Mr. Rodgers continued committing overt acts in furtherance of a conspiracy to defraud after December 7, 2012.

### III

Mr. Rodgers is, in essence, asking the Court to reweigh the evidence presented at trial and find his testimony more credible than the testimony presented against him. However, the Court may not reevaluate the credibility of witnesses, and Mr. Rodgers did not meet the heavy burden of claiming insufficient evidence. Accordingly, for the foregoing reasons, the Court hereby **ORDERS** that the Mr. Rodgers is not entitled to a judgment of acquittal. The jury verdict remains in force, and Defendant Ronnie C. Rodgers's Rule 29 motion [**R. 74**] is **DENIED**.

This the 23d day of October, 2018.

Gregory F. Van Tatenhove
United States District Judge