UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 3:17-cr-0016-GFVT |
| ) | |
| V. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| RONNIE C. RODGERS, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the United States' Third Motion for Restitution in support of Restitution for victims Michael Darby and Raymond Jackson. [R. 138.] After the Court denied the Government's request for restitution for several victims of Defendant Ronnie C. Rodger's conspiracy to commit securities fraud, the Court granted the United States leave to make any supplemental filings. While the Court need not determine restitution by finding facts beyond a reasonable doubt, the Court must determine a loss amount by a preponderance of the evidence. Because these requests are supported by sufficient evidence, the Court **GRANTS** the Government's Third Motion for Restitution. Previously, the Court ordered Mr. Rodgers to pay restitution in the amount of $5,424,928.47. [R. 135.] However, after restitution for two more victims, Mr. Rodgers is now ordered to pay restitution in the combined amount of **$5,527,904.08**, as further outlined below.

**I**

Mr. Ronnie Rodgers was charged on December 7, 2017 with one count conspiracy to commit mail fraud, wire fraud, and securities fraud in violation of 18 U.S.C. §§ 1341 and 1343,

15 U.S.C. § 78j(b), and 17 C.F.R. § 240-10b-5. [R. 1.] According to the indictment, from 2007 through 2017, Mr. Rodgers and his associates executed a scheme to sell oil and gas leases in geographical areas where Mr. Rodgers knew the leases would not produce enough oil or gas to provide a return on the investments. *See id.*

The jury returned a guilty verdict for conspiracy to commit mail fraud, wire fraud, and securities fraud. [R. 64.] To convict Mr. Rodgers with mail or wire fraud, the jury was required to find the development of or participation in a scheme to defraud, that he used the mails or an interstate wire communication in furtherance of the scheme, and that he possessed "intent to deprive a victim of money or property." *United States v. Ramer*, 883 F.3d 659, 681 (6th Cir. 2018) (enumerating the elements of mail fraud); *United States v. Olive*, 804 F.3d 747, 753 (6th Cir. 2015) (enumerating the elements of wire fraud and noting, "Mail fraud has essentially the same elements [as wire fraud] except that the use of the mails rather than a wire is required."). For the jury to convict Mr. Rodgers of securities fraud, the jury had to find that he used or employed a manipulative or deceptive device in contravention of 17 C.F.R. § 240-10b-5 in connection with the purchase or sale of a security. 15 U.S.C. § 78j(b). Accordingly, the jury had to determine that Mr. Rodgers (1) employed a device, scheme, or artifice to defraud, (2) made any untrue statement or omission of a material fact, or (3) engaged in an act, practice, or course of business, operating as a fraud or deceit. 17 C.F.R. § 240-10b-5. However, Mr. Rodgers was charged with *conspiracy* to commit one of these things, and thus, the jury only need to find that Mr. Rodgers joined in agreement to commit mail, wire, or securities fraud, and that at least one person in the conspiracy committed an overt act in support of the conspiracy. *United States v. Phillips*, 872 F.3d 803, 806 (6th Cir. 2017).

Mr. Rodgers was sentenced on January 9, 2019, to forty-eight months imprisonment, followed by three years of supervised release. [R. 88; R. 90.] Restitution was ordered, but a specific calculation of restitution was deferred pending briefing by both parties.[1] *Id.* The United States filed a motion for an award of restitution in the total amount of $6,874,766.01, on January 25, 2019, which included only a spreadsheet of the victims' alleged loss amounts and lacked any evidence to support those requests. [R. 97.] Mr. Rodgers made objections to a general award of restitution but made no specific objections to requests by each victim. [R. 101.] At a hearing held on February 20, 2019, the Court determined more evidence was needed to award restitution and directed further briefing. [R. 103; R. 104.] The United States filed their supplementation under seal [R. 116], and this Court granted in part and denied in part the government's First Motion for Restitution. [R. 121.] The Court found that the vast majority of requests lacked specificity as to how much the victim actually lost. *Id.* The United States then filed a Second Motion for Restitution in support of victims ordered inaccurate, or denied, restitution pursuant to the Court's previous order. [R. 130.] This Court granted in part and denied in part the United States' Second Motion and ordered the Government may file additional requests of restitution with the necessary documentation and specificity within 30 days from the Court's Order. [R. 135.] Upon confirming information on two of the victims, the United States has now filed a Third Motion for Restitution. [R. 138.] Mr. Rodgers has not filed any objections.

---

[1] Under 18 U.S.C. §3664(d)(5), the Court must determine restitution within ninety days of sentencing the defendant. Mr. Rodgers's sentencing was held on January 9, 2019, and that ninety-day window has now passed. However, when a sentencing court misses the deadline, it does not forfeit power to order restitution if, prior to the deadline, the court made clear it would order restitution, but failed to specify an amount within ninety days. *Dolan v. United States*, 560 U.S. 605, 607–08 (2010). The Court stated at sentencing that restitution would be ordered pursuant to the Mandatory Victims Restitution Act but briefing on the specific amount of restitution was not completed until April 26, 2019. [R. 119.] Thus, under *Dolan*, the Court retains authority to set restitution for Mr. Rodgers.

## II

Restitution in this case is mandatory. The Mandatory Victims Restitution Act (MVRA) requires Courts to order restitution when sentencing defendants convicted of certain offenses. 18 U.S.C. § 3663A(a)(1). Included in these offenses are crimes against property, including crimes involving fraud and deceit. § 3663A(c)(1)(A)(ii). When a defendant is convicted of a conspiracy, a Court may calculate restitution using "damage resulting from any conduct that was part of the conspiracy and not just from specific conduct that met the overt act requirement of the conspiracy conviction." *United States v. Sawyer*, 825 F.3d 287, 295 (6th Cir. 2016) (citations and quotations omitted). Furthermore, if more than one defendant contributed to a victim's losses, the Court is permitted to make each defendant liable for the full amount of restitution or may choose to apportion restitution accordingly. 18 U.S.C. § 3664(h). The Government bears the burden of proof to demonstrate the amount of loss sustained by a victim, and disputes must be resolved by the Court under a preponderance of the evidence standard. § 3664(e). In this specific matter, it is also important to note that restitution is calculated based on the full amount of a victim's losses, not Mr. Rodgers's gain. § 3664(f)(1)(A).

A victim's losses must only be demonstrated by a preponderance of the evidence. §3664(e). The "preponderance of the evidence" standard requires a trier of fact, in this case, the Court, to find "the existence of a fact is more probable than its nonexistence." *Concrete Pipe and Prods. of Cal., Inc. v. Construction Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993) (quoting *In re Winship*, 397 U.S. 358, 371–72 (1970)). Because the burden here rests on the Government, the Government must persuade the Court of the existence of their proposed facts. *Id*.

Evidence "underlying an award must have sufficient indicia of reliability to support its probable accuracy." *United States v. Sawyer*, 825 F.3d 287, 294–95 (6th Cir. 2016) (citations and quotations omitted). The Court must make adequate factual findings when the calculated loss amount is disputed. *United States v. Sexton*, 894 F.3d 787, 801 (6th Cir. 2018). But the Circuit Courts generally leave evidentiary determinations, and which evidence provides an indicium of reliability, up to the District Courts, so long as the District Court explains its reasons.

If Mr. Rodgers had been indicted on specific counts of fraud, the jury would have had the opportunity to consider each victim's allegations and either accept or deny the evidence behind those allegations beyond a reasonable doubt. However, this does not mean that Mr. Rodgers cannot be held responsible for those losses. In *Apprendi v. New Jersey*, the Supreme Court found, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). However, because restitution statutes do not specify a statutory maximum amount, the Sixth Circuit has held that restitution claims need not be submitted to a jury. *United States v. Sosebee*, 419 F.3d 451, 461 (6th Cir. 2005). In this matter, restitution requests must demonstrate by a preponderance of the evidence, that the victim's losses result from conduct in furtherance of the convicted conspiracy, not just conduct from the over acts required for a conspiracy conviction. *United States v. Sawyer*, 825 F.3d 287, 295 (6th Cir. 2016).

Each request will require individual determinations of reliability, particularly when a defendant can provide evidence contrary to a victim's statement. Even without objections by a defendant, however, the victim's request must still include "sufficient indicia of reliability." *United States v. Sawyer*, 825 F.3d 287, 294–95 (6th Cir. 2016). Because the Sixth Circuit generally upholds a district court's restitution award so long as it is within "the universe of

acceptable computations," and because the Court "has wide latitude to determine the amount of a victim's losses," the Court takes this opportunity to outline what uncontested evidence would include such reliability sufficient to support an award of restitution. *United States v. Sawyer*, 825 F.3d 287, 295 (6th Cir. 2016); *United States v. Patel*, 711 F. App'x 283, 287 (6th Cir. 2017).

The difficult question arises when a victim did not testify, was not subject to cross examination, but has submitted a statement to the Government, the USPO, or the Court requesting a specific award of restitution. While those statements may be sworn affidavits, the Court determines that statements by a victim, without additional documentation of loss amount, do not include sufficient indicia of reliability. *See, e.g., United States v. Steele*, 897 F.3d 606, 613 (4th Cir. 2018) (finding a victim's unsupported loss estimate, without additional evidence, insufficient to satisfy the Government's burden of proof); *United States v. Charles*, 895 F.3d 560, 566 (8th Cir. 2018) (finding mere statements, without other documentation, do not support a Government's claim by a preponderance of the evidence); *United States v. Baker*, 584 F. App'x 469, 471–72 (9th Cir. 2014) (finding the district court properly discredited evidence which did not clearly specify victim's losses or clearly specify how such losses were caused by the defendant's criminal conduct); *United States v. Simmons*, 544 F. App'x 21, 24 (2d Cir. 2013) (finding the court abused its discretion by awarding restitution based on nothing more than an unsworn letter by a victim when the Government provided "almost no information about the loss amount, no documentation regarding [the victim's] loss, and no explanation as to why procuring details or documentation was impracticable"). *But see United States v. Dial*, 705 F. App'x 250, 255–56 (5th Cir. 2017) (finding the district court was permitted to rely solely on victim impact statements unless the defendant presented rebuttal evidence); *United States v. Lopez*, 503 F.

App'x 147, 150 (3d Cir. 2012) (upholding an award of restitution based only on a Government-prepared spreadsheet of losses and a sworn statement by the victim).

While a conclusory statement by a victim suggests a loss, such statement does not provide sufficient evidence to determine the amount of loss or whether such loss was proximately caused by the victim. Bank records, copies of checks, invoices, deposit slips, etc. all demonstrate a presumably reliable record of financial loss to which a defendant may make specific objections. If the Government submits only a victim's statement of a total loss amount, a defendant would be forced to locate those same records in order to rebut the Government's request. But determination of restitution is not a burden shifting framework and requiring this of the defendant improperly shifts the burden from the Government to demonstrate loss amount to the defendant to disprove loss amount. A detailed sworn statement, however, outlining the total loss amount and how that loss amount was calculated, may be sufficient if the calculation is consistent with the testimony offered at trial.

Accordingly, the Court finds that mere conclusory statements, whether sworn or unsworn, are also insufficient to establish reliability sufficient to support an award of restitution. For this Court to find the required indicia of reliability, the Government must provide evidence other than a victim's stated loss amount to establish loss and the amount of that loss. In this case, copies of checks written to Mr. Rodgers and/or his affiliated companies, bank records showing transfers of money, invoices by Mr. Rodgers and/or his affiliated companies, and other related documents would indicate reliability to the Court. Furthermore, the Court will consider detailed affidavits that include calculations of loss consistent with testimony offered at trial to be reliable. The Court further notes that this list is not exclusive.

A

Having outlined this framework, the Court now considers the restitution requests by the Government.

1

Michael Darby was included in the United States' Second Motion for Restitution but was denied as Plaintiffs were unable to confirm Mr. Darby's loss amount sufficient to meet the Court's deadline. [R. 138 at 2.] Mr. Darby has since provided additional evidence that confirms he invested a total of $78,333 in three different packages. *Id*. The three packages included Adair Clinton #6, ("AC 6"), #7 ("AC7") and Clinton Pulaski #13 ("CP 13"). *Id.* Mr. Darby provided the contracts for all three investments and initial investment checks for AC 6 and CP 13. [R. 138-2.] While Mr. Darby is unable to obtain his initial check for AC 7, he did provide a copy of the check of the completion fee he submitted for AC 7. *Id*. This provides the Court evidence of his completion fee in AC 7 and corroborates his initial $25,000 investment into AC 7. [R. 138 at 2.] Mr. Darby received a total of $5,537.39 in royalty payments from both Barrett Oil Purchasing Inc. and Sunoco Inc. [R. 138-2.] Without evidence to the contrary, the Court concludes that Mr. Darby has provided sufficient information to calculate his loss of $72,975.61.

2

Mr. Raymond Jackson was not included in the First or Second Motion for Restitution, the United States was unable to procure all the documentation necessary until recently. [R. 138 at 3.] Mr. Jackson has submitted a sworn statement along with a letter from Ronnie Rodgers confirming that Mr. Jackson invested $30,000. [R. 138-3.] The United States also provided a copy of a 2010 interview between Mr. Jackson and an investigator, corroborating his status as $30,000 investor. *Id*. Mr. Jackson also noted that he received no royalties, distributions, or other

payments. *Id*. Without evidence to the contrary, the Court concludes that Mr. Jackson has provided sufficient information to calculate his loss as the amount of his investment, $30,000.

### III

Accordingly, and the Court being sufficiently, advised, the Government's Third Motion for Restitution **[R. 138]** is **GRANTED** as follows:

1. Mr. Rodgers **SHALL PAY** restitution to Michael Darby in the amount of $72,975.61;

2. Mr. Ronnie Rodgers **SHALL PAY** restitution to Raymond Jackson in the amount of $30,000.00;

3. The United States Probation Office is vested with the authority to organize payments of these restitution amounts, keeping in mind that payment should be made as soon as the Defendant is able; and

4. Following the Court's resolution of these additional requests made by the Government, the Judgment in this case shall be amended to reflect this Court's findings regarding restitution.

This the 4th day of August, 2020.

Gregory F. Van Tatenhove
United States District Judge